**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Luis A.G.A.,

        Petitioner,

v.

Kristi Noem, *Secretary, U.S. Department of Homeland Security; Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement; Immigration and Customs Enforcement*, David Easterwood, *Field Office Director of Enforcement and Removal Operations, Minneapolis - St. Paul Field Office, Immigration and Customs Enforcement*; Miguel Vergara, *Field Office Director of Enforcement and Removal Operations, San Antonio Field Office, Immigration and Customs Enforcement*; and Warden of South Texas ICE Processing Center, *custodian of detainees at the South Texas ICE Processing Center*, *each in their official capacity*,

        Respondents.

Civ. No. 26-1479 (JWB/SGE)

**ORDER ON**
**PETITION FOR WRIT OF**
**HABEAS CORPUS**

---

Karen Venice Bryan, Esq., KB Law PLLC, counsel for Petitioner.

David W. Fuller, Esq., and Justin Merak Page, Esq., United States Attorney's Office; and David R. Hackworthy, Esq., Department of Homeland Security, counsel for Respondents.

---

This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) after previously releasing him from custody under 8 U.S.C. § 1226 and placing him in removal proceedings under 8 U.S.C. § 1229. The answer is no. Because Respondents previously exercised authority to release Petitioner Luis A.G.A. under

§ 1226, that statute—not § 1225—governs detention while removal proceedings remain pending.

Respondents were ordered to answer the Petition with a memorandum explaining their position and affidavits and exhibits as needed to establish the lawfulness of Petitioner's detention. (*See* Doc. No. 5.) Respondents limited their written response to two pages, stating that they assert all arguments raised in *Avila v. Bondi*, Civ. No. 25-3741 (JRT/SGE), 2025 WL 2976539 (D. Minn. Oct. 21, 2025) and *Buenrostro-Mendez v. Bondi*, No. 25-20496, ___ F.4th ___, 2025 WL 323330 (5th Cir. Feb. 6, 2026), and arguing that release is an improper remedy. (*See* Doc. No. 7.) The response also includes two exhibits: a Notice to Appear dated July 31, 2024, with the Order of Expedited Removal that the Notice vacates (Doc. No. 7-1, Govt. Ex. A), and an I-200 Warrant for Arrest dated January 13, 2026 (Doc. No. 7-2, Govt. Ex. B).

Respondents' position that § 1225 applies after a noncitizen has been released from custody has been often rejected in this District. *See, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025). Therefore, the petition is granted to the extent that it requests release.

## BACKGROUND

Petitioner is a citizen of Ecuador. (*See* Doc. No. 2, Petition ¶¶ 1, 34, 43.) He entered the United States near Lukeville, Arizona on July 1, 2024. (*Id.* ¶¶ 1–2, 43; *see also* Doc. No. 7-1, Govt. Ex. A at 1.) After entry, Respondents released him from custody

2

on his own recognizance. (Petition ¶¶ 2, 43.)

The standard Order of Release on Recognizance, Form I-220A, states that the noncitizen is being released "[i]n accordance with section 236 of the Immigration and Nationality Act," which corresponds with § 1226. Neither side submitted evidence showing that order was ever cancelled or revoked in Petitioner's case.

Petitioner was also issued a Notice to Appear designating him "an alien present in the United States who has not been admitted or paroled" and charging inadmissibility under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1182(a)(6)(A)(i). (Petition ¶¶ 2, 43; Doc. No. 2-1, Pet. Ex. A at 2; Govt. Ex. A at 2.) The Notice vacated a prior Order of Expedited Removal issued pursuant to 8 U.S.C. § 1225(b)(1) and placed Petitioner in removal proceedings pursuant to 8 U.S.C. § 1229a, which governs full removal proceedings before an Immigration Judge. (*Id.*)

Petitioner has since lived in Minnesota. (*See* Petition ¶¶ 4, 19.) He applied for asylum in October 2025. (*Id.* ¶¶ 3, 44; Doc. No. 2-2, Pet. Ex. B.) Petitioner alleges that he has complied with all requirements imposed by immigration authorities and has no criminal history. (Petition ¶¶ 3, 5, 45, 47.)

On January 13, 2026, Immigration and Customs Enforcement agents apprehended Petitioner. (*Id.* ¶ 5, 12, 46.) He alleges that he was arrested without explanation or any proper notice. (*Id.* ¶¶ 6, 46, 48.) Petitioner alleges that Respondents then flew him to Texas without notifying his counsel.[1] (*Id.* ¶¶ 7, 12, 19, 29, 48.) Petitioner remains

---

[1]     This allegation implicates the Temporary Restraining Order issued on February 12, 2026 in *Advocates for Human Rights v. U.S. Dep't of Homeland Security*, Civ. No.

detained in Texas. (*Id.* ¶¶ 34, 39.)

## DISCUSSION

### I.    Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* at 687–88.

### II.    Analysis

Petitioner challenges only the lawfulness of his detention under federal law. He does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn.

26-749 (NEB/DLM). Although there is no issue here because Petitioner was detained and transferred before the TRO was issued, Respondents are reminded that they are expected to comply with the TRO.

2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

The Immigration and Nationality Act ("INA") distinguishes between inspection, removal proceedings, and detention authority. "Inspection" is the process by which immigration officers determine whether a noncitizen seeking entry at the border or a port of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a). Section 1225 governs that process and generally requires detention. *Id.*; *see also Maldonado*, 795 F. Supp. 3d at 1149.

Section 1226, by contrast, governs detention of noncitizens already present in the United States. *Jennings*, 138 S. Ct. at 846. Detention under § 1226(a) is not mandatory and permits release on bond or recognizance. *Maldonado*, 795 F. Supp. 3d at 1149–50.

Respondents did not provide a detailed response to Petitioner's claim that § 1225(b)(2) does not apply to him. They instead rely on the arguments asserted in *Avila*, 2025 WL 2976539, and the recent decision in *Buenrostro-Mendez*, No. 25-20496, __ F.4th __[2], to support their assertion that § 1225(b)(2) authorizes the detention of certain "applicants for admission" pending removal proceedings. While those cases are factually distinct because they involved petitioners who *did not* encounter immigration officials

---

[2]    Respondents cite *Buenrostro-Mendez* for the proposition that § 1225(b)(2)(A) mandates detention without bond for noncitizens encountered in the interior. This Court is not persuaded. That interpretation turns "seeking admission" into a perpetual status rather than a present act tied specifically to inspection or entry. Read in context of the INA as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, § 1226 governs detention of noncitizens already present in the United States pending removal proceedings.

when they entered the country, Respondents maintain that the legal issues overlap.

The vast majority of district courts considering Respondents' position, including this Court, have determined that the text, structure, and function of the INA's detention provisions all indicate that § 1225 does not apply to noncitizens released to the interior of the country like Petitioner. *See Eliseo A.A. v. Olson*, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025); *Khalid B.Q. v. Noem*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 (D. Minn. Dec. 18, 2025); *Xuseen A. v. Bondi*, Civ. No. 25-4514 (JWB/DJF), Doc. No. 16 (D. Minn. Dec. 19, 2025).

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), does not alter the result either. Respondents have previously cited to it as if it reflects an independent adjudicatory resolution of statutory ambiguity. It does not. The Board of Immigration Appeals ("BIA") is a component of the Department of Justice ("DOJ") and operates under the Attorney General's supervisory authority. Its precedents are subject to review, revision, and overruling by the Attorney General, who sets binding interpretations of the INA for the Executive Branch. *Yajure Hurtado* thus reflects the DOJ's adopted litigation position concerning the scope of § 1225(b)(2), not an interpretation generated independently of that position. *See* Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025) (memo from DHS requiring that all "applicants for admission" be detained under § 1225(b)(2) during removal proceedings).

And even if *Yajure Hurtado* were such an independent interpretation, it would run

headlong into the statute's text and structure for the reasons already explained. Where an agency's reading conflicts with the statute Congress enacted, it does not control. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (explaining that only long-standing and consistent agency interpretations merit weight); *see also Belsai D.S. v. Bondi*, Civ. No. 25-3682 (KMM/EMB), 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1, 2025).

In habeas review, the question is not whether the Executive Branch has spoken with one voice—whether through the DOJ or BIA—but whether the detention authority it asserts is grounded in statute. That determination remains for the Article III courts. *See Zadvydas*, 533 U.S. at 688.

The analysis here is straightforward. Respondents released Petitioner from custody under § 1226, placed him in removal proceedings under § 1229a, and allowed him to remain in the community for over a year. Nothing in the record suggests Respondents ever revoked that release based on flight risk, danger, changed circumstances, or any other reason.

Section 1225(b)(2) provides no authority to revisit that custody determination later. The Supreme Court has consistently treated §§ 1225 and 1226 as addressing different populations at different procedural moments, not as interchangeable sources of detention authority. *Jennings*, 138 S. Ct. at 836–38. Nothing in § 1225 authorizes Respondents to revive mandatory detention just by recharacterizing a previously released noncitizen as an applicant for admission. *See, e.g., Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 969–70 (D. Minn. 2025). The statute contains no mechanism for that switch.

Allowing Respondents to toggle between detention regimes in this way would collapse the statutory structure Congress enacted and render § 1226 largely superfluous.

On this record, Petitioner's continued detention rests on a statute and an interpretation that do not apply and is unlawful. *See Khalid B.Q.*, Civ. No. 25-4584, Doc. No. 10 at 6; *Xuseen A.*, Civ. No. 25-4514, Doc. No. 16 at 7. Thus, he is entitled to a writ of habeas corpus that grants his immediate release subject to the conditions in his original Order of Release on Recognizance. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

Respondents argue that if Petitioner has been misclassified under § 1225, the proper remedy is a bond hearing under § 1226 rather than release. But a bond hearing presupposes lawful detention authority under § 1226. Where that authority has not been invoked or established, ordering a bond hearing would treat the absence of statutory power as a mere procedural irregularity rather than a substantive defect. Habeas relief requires more because it addresses the lawfulness of custody itself, not the adequacy of procedures that might attend some other, uninvoked challenge to detention. *See Wajda v. United States*, 64 F.3d 385, 389 (8th Cir. 1995).

Respondents filed an I-200 arrest warrant dated January 23, 2026, but they have not supplied any affidavit explaining its authenticity or shown how they otherwise followed the procedures for properly detaining Petitioner under § 1226. The warrant's impact is also minimal here because Respondents had already released Petitioner on recognizance in 2024. *See, e.g.*, *Victor C.S. v. Bondi*, Civ. No. 26-1366 (NEB/DLM), Doc. No. 8 at 8–9 (D. Minn. Feb. 16, 2026) (declining to resolve questions about a

8

warrant's validity and timing and ordering immediate release because petitioner had been previously released on recognizance); *Jose A.D.S. v. Noem*, Civ. No. 26-1040 (JMG/EMB), Doc. No. 7 (D. Minn. Feb. 11, 2026) (reasoning that warrant does not justify revoking the petitioner's prior release on recognizance and ordering immediate release). Even so, it remains clear through Respondents' answer that they continue to assert that § 1225 provided them the authority to detain Petitioner, not § 1226. As explained above, § 1225 is not a lawful basis for detention. And for detention that lacks a lawful predicate, release is an appropriate remedy. *Munaf*, 553 U.S. at 693.

Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings. Because Petitioner has shown Respondents have not invoked a provision of the INA that authorizes his continued detention, the Petition for Writ of Habeas Corpus is granted, and Petitioner's other habeas claims are not reached.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that:

1.    Petitioner Luis A.G.A's Petition for Writ of Habeas Corpus (Doc. No. 2) is **GRANTED**.

2.    **Release**. Respondents shall immediately release Petitioner from custody. He must be released in Minnesota subject only to any conditions of his July 2024 release on recognizance. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not

9

limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

If Petitioner is currently held outside Minnesota, Respondents shall immediately initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiation of return based on administrative convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

3.      **Notice.** Respondents shall file an update on the status of Petitioner's release by 5:20 p.m. on February 22, 2026. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

10

4.      Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's immediate release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

5.      Respondents may not re-detain Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

6.      Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 20, 2026              *s/ Jerry W. Blackwell*
Time: 5:20 p.m.                      JERRY W. BLACKWELL
                                     United States District Judge

11